**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOANG TRONG LE | No. 2:19-CV-0751-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. ECF Nos. 7, 21. This case is thus before the Court for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, ECF Nos. 15. 16.

For the reasons discussed below, the Commissioner's final decision is reversed and the matter will be remanded for further proceedings consistent with this opinion.

/ / /

/ / /

/ / /

/ / /

1

# I. STANDARD OF REVIEW

This Court may affirm, modify, or reverse a decision Commissioner of the Social Security Administration. 42 U.S.C. § 405(g). This Court's review of a final decision of the Commissioner Administration denying benefits under the Social Security Act, however, is limited in scope. Review of the Commissioner's decision is highly deferential. Ford v. Saul, 950 F.3d 1151, 1153–54 (9th Cir. 2020); Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015). When reviewing the Commissioner's decision, the Court will uphold a decision if it is supported by substantial evidence and applied the correct legal standards. 42 U.S.C. § 405(g); see Ford, 950 F.3d at 1153–54; Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). The Commissioner's findings on any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. 405(g). In determining whether the Commissioner's findings are based on substantial evidence, the Court looks to the record as a whole. See, e.g., Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). The Court must consider both evidence that support's the Commissioner's decision and evidence that contradicts it. Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).

Substantial evidence means more than a mere scintilla, but less than a preponderance. E.g., id.; Revels, 874 F.3d at 654. Substantial evidence is such relevant evidence as a reasonable mind could accept as adequate to support a conclusion. Garrison, 759 F.3d at 1009. If evidence is susceptible to multiple rational interpretations, one of which supports an ALJ's interpretation, then the ALJ's conclusion must be upheld. Revels, 874 F.3d at 654. It is the ALJ who is initially responsible for resolving ambiguities, determining credibility, and resolving conflicts in medical testimony and evidence. E.g., Garrison, 759 F.3d at 1009. Even if evidence is truly susceptible to more than one rational interpretation, the Court must uphold an ALJ's findings if they are supported by inferences reasonably drawn from the record. Ghanim v. Colvin, 763 F.3d 1154, 1159–60 (9th Cir. 2014). The Court, however, may only review the reasons that the ALJ provided for their decision, and cannot affirm the ALJ on grounds on which they did not rely. Revels, 874 F.3d at 654.

Finally, the Court will not reverse the Commissioner's decision if it is based on harmless error. E.g., Tommasetti, 533 F.3d at 1038. Harmless error exists when it is clear from the record before the Court that an ALJ's error was inconsequential to the ultimate determination of non-disability. E.g., id.

## II. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

|   |   |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

### III. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 3, 2015. See CAR 16.[1] In the application, plaintiff claims disability began on April 30, 2011.[2] See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on November 16, 2017, before Administrative Law Judge (ALJ) Peter F. Belli. In a May 13, 2018, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. Prior to December 31, 2006, the date the claimant was last insured, the claimant had no medically determinable impairments;

2. Because the claimant had no medically determinable impairments through the date last insured, the claimant is not entitled to benefits under Title II and the decision therefore considers whether the claimant is entitled to supplemental security income benefits under Title XVI for the period starting December 4, 2015, the day following the application date, through the present;

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on January 21, 2020. See ECF No. 10.

[2] The ALJ noted that there were conflicting onset dates in the record. See CAR 16. In Plaintiff's applications, he alleged an onset date of April 30, 2011. Id. On the Disability Report, Plaintiff indicated an onset date of June 1, 2001. See id. (citing Ex. 2E at 2). Elsewhere, Plaintiff states he became unable to work on October 1, 2011. See id. (citing Ex. 1D). As to this conflict, the ALJ stated that because the alleged onset dates in 2011 were after the date that Plaintiff was last insured for the purposes of Title II on December 31, 2006, the Field Office recommended an onset date of April 30, 2011. Id. That is the date Plaintiff last engaged in substantial gainful activity. Id.

3.   Since December 4, 2015, the claimant has the following severe impairment(s): bipolar disorder;

4.   Since December 4, 2015, the claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

5.   Since December 4, 2015, the claimant has the following residual functional capacity: a full range of work at all exertional levels; he is able to receive, remember, understand, and carry out simple job instructions and occasionally perform detailed tasks; he can interact with the public occasionally or less; he can occasionally to frequently interact with coworkers and supervisors; he can occasionally adjust to changes in the workplace and frequently make workplace judgments;

6.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See CAR 16–27. After the Appeals Council declined review on February 28, 2019, Plaintiff appealed, and the case is now before this Court.

## IV. DISCUSSION

Plaintiff argues: (1) the ALJ failed to consider all the medical opinions of record; (2) the ALJ failed to properly explain the decision at Step 3; (3) the ALJ failed to properly explain his mental residual functional capacity assessment; (4) the ALJ failed to provide sufficient reasons to reject Plaintiff's testimony as not credible; and (5) the ALJ failed to properly evaluate lay witness evidence; and (6) the ALJ improperly rejected the opinions of treating and examining providers.

### A.  **Medical Opinions:**

Plaintiff argues both that the ALJ impermissibly disregarded medical opinions, and that the ALJ improperly gave greater weight to the opinions of nonexamining physicians over treating physicians. ECF No. at 15 at 7–9, 13–16 Plaintiff effectively argues that the error in assigning weight infected the ALJ's entire sequential evaluation. See generally id. Because an ALJ's weighing of medical opinions necessarily affects other evidentiary considerations–e.g., residual functional capacity—the Court first addresses Plaintiff's arguments concerning the ALJ's handling of the medical opinions in this case.

/ / /

5

1          Plaintiff's motion for summary judgment argues that an October 2017 joint letter

2   from Plaintiff's treating psychiatrist, Dr. Puja Chadha, MD, and therapist, Ms. Norbee Xiong,

3   MSW, did not receive proper consideration. Id. at 7. As with portions of the Plaintiff's motion and

4   reply brief, Plaintiff's argument is rather haphazard and difficult to follow. ECF Nos. 15 at 7–8; 19

5   at 8–10. Plaintiff appears to imply both that ALJ did not properly consider the letter in his decision,

6   and that the letter was new evidence that the Appeals Council improperly rejected. Id. at 7–8.

7          The issue is of no moment. As Plaintiff concedes in his reply brief, the ALJ did

8   consider the letter. ECF No. 19 at 1, 8. Apparently, a copied version of the October 2017 letter

9   appeared in a progress note from the files of Plaintiff's therapist. ECF No. 19 at 8; CAR 37–38.

10   The ALJ apparently saw and considered the original. ECF No. 19 at 8; CAR 22 at 874–75.  The

11   Court accordingly does not consider any argument that the ALJ neglected to consider the October

12   2017 letter, or that the Appeals Council improperly rejected new evidence.

13          In conceding his error, Plaintiff appears to argue that substantial evidence does not

14   support the ALJ's evaluation of the October 2017 letter. ECF No. 19 at 8–10. The Court addresses

15   that argument alongside its discussion of the weight given to Dr. Chadha and Ms. Xiong's opinions.

16         **1.  Weighing Medical Opinions:**

17          "The ALJ must consider all medical opinion evidence." Tommasetti, 533 F.3d at

18   1041 (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion.

19   See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). It is also error to fail to set forth

20   sufficient reasons for crediting one medical opinion over another. See id.

21          In evaluating medical evidence from different physicians, the Ninth Circuit and

22   social security regulations distinguish amongst opinions from types of physicians. See Lester v.

23   Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also 20 C.F.R. § 404.1527(c). The Ninth Circuit

24   classifies three types of physicians: (1) those who treat the claimant (treating physicians); (2) those

25   who examine but do not treat the claimant (examining physicians); and (3) those who neither

26   examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830.

27          A treating physician's opinion is entitled to controlling weight if it is well-supported

28   and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The

Commissioner will generally also give greater wight to opinions from examining physicians than opinions from non-examining physicians. 20 C.F.R. § 404.1527(c)(1). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor, and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. Lester, 81 F.3d at 830. An ALJ satisfies this test is met by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751–55 (9th Cir. 1989). An ALJ must, however, offer more than conclusions. The ALJ must set forth their own interpretations and explain why they, rather than the doctors, are correct. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830–31.

In other words, physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The weight given to an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. 20 C.F.R. § 416.927(c)(3)-(6). Furthermore, the ALJ need not accept any physician's opinion if it is brief, conclusory, and unsupported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ errs when the ALJ rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. Garrison, 759 F.3d at 1012–13. An ALJ, however, is not required to discuss evidence that is neither significant nor probative. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.2003).

The findings of a nontreating, nonexamining physician, although not substantial evidence on their own, can amount to substantial evidence provided that the opinions are consistent with independent clinical findings or other evidence on the record. Thomas, 278 F.3d at 957; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996); see Lester, 81 F.3d at 831–32.

/ / /

7

1    **2.  The ALJ's Decision:**

2          At Step 4, the ALJ considered medical opinion evidence. <u>See</u> CAR 22, 24. After

3    concluding Plaintiff's testimony was not credible, the ALJ stated that his conclusion was supported

4    by the opinions of State agency psychologists Dr. Kim Morris, Psy.D. and Dr. Helen C. Patterson,

5    Ph.D. CAR 24. Dr. Morris and Dr. Patterson concluded that Plaintiff could undertake simple and

6    detailed tasks, maintain appropriate social behavior, accept supervisors' instructions and feedback,

7    and make simple work-related decisions. <u>Id.</u> (citing Exs. 1A, 2A, 5A, 6A). The consultants

8    observed that the statements from his treating providers because treatment notes illustrated that

9    Plaintiff's condition had been stable for at least a year. <u>Id.</u> (citing Exs. 1A at 6, 5A at 6).

10         The ALJ gave Dr. Morris' and Dr. Patterson's opinions "good weight" because the

11   consultants were familiar with Social Security program rules and because their assessments were

12   consistent with the objective findings and indications that Plaintiff is stable on medications. <u>Id.</u>

13   Plaintiff, the ALJ noted, has not required frequent changes in medication, psychiatric

14   hospitalizations, emergency care, crisis intervention, or other alternative measures meant to control

15   his psychiatric symptoms. <u>Id.</u> The ALJ gave little weight to the opinions of treating sources, Dr.

16   Chadha and Ms. Xiong, and examining psychologist, Dr. Frank Capobianco, M.D. <u>See id.</u> at 22.

17   The ALJ did not consider a 2013 opinion from Dr. Wendy McCray, Ph.D. <u>See id.</u> at 16–26.

18         In the context of discussing the credibility of Plaintiff's statements and testimony,

19   the ALJ commented on medical opinions provided by Plaintiff's treating sources:

20    The claimant's allegations would find support in the opinions of his treating
      psychiatrist and counselor. However, these opinions are given little weight.
21    Puja Chadha, M.D., opined in June 2016 that the claimant had moderate to
      extreme limitations in understanding and memory, concentration,
22    interaction, and adaptation. She opined he had extreme limitations in his
      ability to tolerate normal stress and his mental symptoms would constantly
23    interfere with his ability to sustain work activity. He would miss 60% of
      work (Ex. 7F).
24
      In May 2017, she opined he had moderate to marked mental limitations and
25    would miss work three to five days per month (Ex. 11F).

26    Norbee Xiong, MSW, opined in September 2016 and again in May 2017
      that the clamant had moderate to marked mental limitations and would miss
27    work two to four days per month (Ex. 8F, 10F).

28

8

1

In October 2017, Dr. Chadha and Ms. Xiong again reported that the claimant could not work due to his psychiatric symptoms, could not interact with the public or coworkers, and could not handle the stress of a normal workday (Ex. 15F/1-3).

2

3

These opinions are given little weight because they are inconsistent with the objective medical findings and clinic notes showing his condition is controlled with medication. A review of the records shows the claimant has a history of treatment of bipolar disorder for which he is prescribed Depakote. Treatment notes show he remained "stable" on subtherapeutic doses. He stopped medications in October 2015 and restarted medications in November 2015. He continued to be resistant to therapeutic dosing but nonetheless reported improvement in his symptoms (Ex. 5F, 6F, 9F).

4

5

6

7

8    CAR 22.

9    **3.  Analysis:**

10    Plaintiff challenges the ALJ's analysis with respect to Dr. Chadha's, Ms. Xiong's,

11    and Dr. Capobianco's opinions. Plaintiff also contends the ALJ erred with respect to the opinion of

12    consultative psychologist, Dr. McCray. Plaintiff specifically contends that ALJ's hearing decision

13    failed to address a September 20, 2017 from Ms. Xiong, improperly weighed Ms. Xiong's and Dr.

14    Chadha's other opinions, improperly weighed Dr. Capobianco's opinion, and improperly failed to

15    address the opinion from Dr. McCray.

16    **i.  Ms. Xiong's September 20, 2017, Opinion:**

17    Exhibit 15F contains a September 20, 2017, statement from Ms. Xiong to the

18    Sacramento Department of Assistance in support of Plaintiff's case for benefits. See CAR 876. Id.

19    Ms. Xiong repeats the letter in her progress notes in Plaintiff's file. Id. at 889. In both, Ms. Xiong

20    stated that Plaintiff had been a patient at an adult psychiatric clinic since October 2015. Id. at 876,

21    889. She stated that Plaintiff, then under the care of Dr. Chadha, was diagnosed with bipolar

22    disorder and was on a regimen of psychotropic medication. Id. at 876, 889. She observed that "[d]ue

23    to ongoing mental health issues he is unable to work in any capacity at this time so he should

24    continue to be eligible for public assistance for the next 12 months." Id. at 876, 889.

25    An ALJ must consider all the evidence in a claimant's record. 42 U.S.C. §

26    423(d)(5)(B). Medical opinion evidence is subsumed under that duty. See 20 C.F.R. 416.927(c);

27    Tommasetti, 533 F.3d at 1041. Regulations define medical opinions as "statements from acceptable

28    medical sources that reflect judgments about the nature and severity of [a claimant's]

9

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant' can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a). The ALJ must consider every medical opinion, regardless of its source. 20 C.F.R. 416.927(c) ("Regardless of its source, [SSA] will evaluate every medical opinion [it] receive[s]."). That consideration extends to opinions of both "acceptable medical sources" and "medical sources." See 20 C.F.R. 416.927(a), (c), (f). The term "medical sources" encompasses both "acceptable medical sources" like licensed medical doctors, and other licensed professionals who are health care providers but not "acceptable medical sources." See 20 C.F.R. § 416.902(a), (i).

Defendant, in response to Plaintiff's contention that the ALJ erred in failing to consider Ms. Xiong's September 2017 opinion, does not contend that Ms. Xiong's statement was not a medical opinion within the meaning of the Social Security Act.[3] See ECF No. 16 at 18. Instead, Defendant argues that the opinion contained no reasoning or expression of functional limitations that necessitated comment. Id. Defendant argues that the opinion consequently carried no weight. Id. Defendant cites Champagne v. Colvin, 582 F. App'x 696 (9th Cir. 2014) as support and remarks that, there, the Ninth Circuit rejected a claim of error when an ALJ disregarded the "opinions" of treating physicians on a claimant's limitations because none of the treating providers gave an opinion on the claimant's functional limitations and because the claimant had not identified any other medically necessary limitation that should have been included his residual functional capacity. Id. (discussing Champagne, F. App'x at 697).

Defendant's citation is unavailing. In a clear distinction, the Ninth Circuit observed that the ALJ reviewed the treating physicians' notes. Champagne, F. App'x at 697. Here the treating physicians offered no source opinions for review. Id. Defendant offers no other support for the contention that the ALJ permissibly overlooked Ms. Xiong's opinion because it did not contain a discussion of Plaintiff's functional limitations. ECF No. 16 at 18–19.

---

[3] Even if Defendant does dispute that Ms. Xiong's letter is an opinion, the Court concludes that it is a medical opinion within the meaning of the Social Security Act. It contained a clear statement from Ms. Xiong as to her evaluation of what work Plaintiff could do despite his ongoing health issues, which she opined was none. The Court determines that the statement is sufficient, albeit brief. See 20 C.F.R. § 416.927(a); McClurkin v. Saul, No. 19-00234 JMS-RT, 2020 WL 292187, at *4–6 (D. Haw. Jan. 21, 2020).

1    Defendant's position would also seem to go against countervailing Ninth Circuit

2    authority mandating that ALJs explicitly reject opinions. See Garrison, 759 F.3d at 1012–13; see

3    also, e.g., Miranda v. Saul, 832 F. App'x 515, 516 (9th Cir. 2020). An ALJ need not accept opinions

4    that are brief, conclusory, and unsupported by clinical findings. Thomas v. Barnhart, 278 F.3d 947,

5    957 (9th Cir. 2002). And the ALJ here would have been entitled to assess the weight to which Ms.

6    Xiong's opinion was entitled based upon the regulatory factors governing evaluation of medical

7    opinions. See 20 C.F.R. § 416.927(c), (f)(1). But that does not excuse the ALJ from the

8    responsibility to expressly state why an opinion will be rejected or given less weight. See, e.g.,

9    Garrison, 759 F.3d at 1012–13.

10    Absent authority convincing the Court of the contrary, the ALJ was required to

11    consider all medical opinion evidence and, if he determined rejection was proper, expressly reject

12    those opinions. 20 C.F.R. 416.927(c); Tommasetti, 533 F.3d at 1041; Garrison, 759 F.3d at 1012–

13    13. Because the ALJ did not do either regarding the September 2017 opinion, there was error. See,

14    e.g., McClurkin v. Saul, 2020 WL 292187, at *4–6. The Court, of course, does not believe, as

15    Plaintiff variously contends across his submissions, that the ALJ willfully ignored the September

16    2017 opinion. Nonetheless, the failure to consider the opinion, or to expressly reject, constituted

17    error here.

18    The question of harmless error arises. The Ninth Circuit has expressed different

19    iterations of the harmless error rules depending on the facts of a given case and the alleged error at

20    issue. Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012). The general principle, to which the

21    Ninth Circuit has held, is that an ALJ's error is harmless if the error was "inconsequential to the

22    ultimate nondisability determination." See id.; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

23    1155, 1162 (9th Cir. 2008)). Determination of inconsequentiality, however, differs across errors.

24    See, e.g., Carmickle, 533 F.3d at 1162; Rodriguez v. Comm'r of Soc. Sec., No. 2:19-CV-1661-

25    DMC, 2021 WL 877556, at *6 (E.D. Cal. Mar. 9, 2021); Harris v. Comm'r of Soc. Sec., No. CV

26    09–1229–HU, 2011 WL 1458037, at *2 (D. Or. Apr. 14, 2011). For instance, harmless error

27    analysis proceeds differently on whether the alleged err involves an ALJ's complete silence on an

28    issue or where the ALJ offers some basis for her decision but some part of that basis is legally

1  flawed. See, e.g., Carmickle, 533 F.3d at 1162; Rodriguez, 2021 WL 877556, at *6; see also, e.g.,

2  Batson v. Comm'r of Soc. Sec., 359 F.3d 1190 (9th Cir. 2004).

3           As relevant here, the Ninth Circuit has applied harmless error analysis to Social

4  Security cases in several scenarios. For example, in Stout v. Commissioner of Social Security, 454

5  F.3d 1050 (9th Cir. 2006), that Court held that an ALJ's failure to consider uncontradicted lay

6  witness testimony could only be considered harmless "if no reasonable ALJ, when fully crediting

7  the testimony, could have reached a different disability determination." Id. at 1056; see Robbins v.

8  Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).

9           Similarly, in Marsh v. Colvin, 792 F.3d 1170 (9th Cir. 2015), the Ninth Circuit held

10  that the harmless error standard applied when an ALJ ignores a treating source's medical opinion.

11  There, an ALJ neglected to discuss a treating physician's opinions that concluded that the claimant

12  was nonfunctional. Marsh, 792 F.3d at 1171–72. In holding that the harmless error standard applied,

13  the Court compared the instant facts to Stout, and remanded the case because the Court could not

14  "confidently conclude" that the treating physician's opinion that the claimant was nonfunctional

15  was harmless error. Id. at 1173.

16           When, as here, the alleged error involves an ALJ's to provide *any* reviewable

17  reasons supporting their decision—i.e., in neglecting to consider and discuss a medical opinion—

18  error is harmless if the Court cannot confidently conclude that no reasonable ALJ could have

19  reached a different conclusion had the error not occurred. See, e.g., Marsh, 792 F.3d at 1171–72;

20  see also Carmickle, 544 F.3d at 1162–63; Stout, 454 F.3d at 1056. The Court assumes in the

21  circumstance of unconsidered testimony that the ALJ would fully credit the testimony. See, e.g.,

22  Marsh, 792 F.3d at 1171–72; Robbins, 466 F.3d at 885.

23           The Court cannot say that the ALJ's neglecting to consider Ms. Xiong's opinion

24  was harmless error. The Court does recognize that the ALJ gave little weight to Ms. Xiong's (and

25  Dr. Chadha's) other opinions. CAR 22. The ALJ determined that their findings of marked

26  limitations seriously impeding Plaintiff's ability to do any work were not consistent with the other

27  medical evidence on the record. Id. Nevertheless, if *fully credited*, Ms. Xiong's September 2017

28  opinion bears directly upon Plaintiff's capacity to do any work at all. See CAR 876, 889. If fully

credited, Ms. Xiong's opinion adds substantial weight to Plaintiff's claims (not to mention any other evidence in his favor). See Robbins, 466 F.3d at 885. The Court cannot confidently conclude that *no* reasonable ALJ, giving full credit to Ms. Xiong's opinion, could have reached a different disability determination—*i.e.*, that Plaintiff was disabled.

## ii.  **Dr. McCray's Opinion:**

Exhibit 4F of the record contains a report from consultative psychologist Dr. McCray which followed her March 15, 2013, evaluation of Plaintiff. See CAR 544–47. Dr. McCray diagnosed Plaintiff with bipolar disorder and offered the following opinions:

> Based upon the current evaluation, including clinical interview, mental status examination, and review of available documentation, the above diagnoses and following medical source statement are offered. . . .
>
> Mr. Le's ability to relate to others, including coworkers, supervisory personnel, and the general public, in an appropriate manner is essentially unimpaired at this time based upon the current evaluation. Mr. Le's ability to maintain his attention and concentration for simple one and two-step tasks appears to be unimpaired. His ability to perform multi-step and higher level cognitive tasks appears to be grossly unimpaired from a cognitive point of view based upon brief mental status examination. Mr. Le's ability to withstand the stress and pressure associated with interview and mental status testing was unimpaired based upon his performance. However, he presents as an individual who would currently become emotionally overwhelmed with the stress and pressure associated with a forty-hour workweek. Mr. Le reported a history of significant financial mismanagement and would likely require assistance managing his supplementary funds in his best interest.

Id. at 546–47.

Plaintiff contends the ALJ erred by failing to consider Dr. McCray's opinion. ECF No. 15 at 8. According to Plaintiff, the ALJ should have considered the report establishing Plaintiff as "an individual who would currently become emotionally overwhelmed with the stress and pressure associated with a forty-hour workweek," and who requires assistance managing funds because of a history of significant financial mismanagement. Id. Plaintiff notes that ALJ's decision nowhere contradicts that Plaintiff was in such an impaired condition in 2013. Id.

Defendant admits that the ALJ overlooked Dr. McCray's 2013 consultative examining opinion. ECF No. 16 at 16.  Defendant nevertheless argues that the error is harmless.[4]

---

[4] Defendant also notes that two State agency consultative psychologists, Dr. Helen C. Patterson, Ph.D., and Dr. Kim Morris, Psy.D., reviewed Dr. McCray's findings in their own opinions, giving her opinion great weight as consistent

Id. at 17–18. Defendant contends that Dr. McCray's findings showed no mental impairments regarding Plaintiff's ability to undertake work activities. Id. In Defendant's view, Dr. McCray's only observation reflecting work-related impairments—that Plaintiff would have difficulty with stress associated with a forty-hour work week—was unsupported by Dr. McCray's own findings. Id. at 18. Defendant contends that any error was thus harmless, and the outcome would not change on remand. Id. Defendants cites unpublished decisions from the Ninth Circuit as support.[5] Id.

Because the ALJ overlooked Dr. McCray's 2013 opinion and said nothing about it, the same harmless error analysis applied to Ms. Xiong's opinion applies here. The Court must ask whether it can confidently conclude that no reasonable ALJ, fully crediting Dr. McCray's decision, could have reached a different disability determination. See, e.g., Marsh, 792 F.3d at 1171–72; see also Carmickle, 544 F.3d at 1162–63; Stout, 454 F.3d at 1056. The Court concludes that it cannot.

Dr. McCray's opinion weighs against Plaintiff in many respects. CAR 546–47. Dr. McCray opined that Plaintiff's faculties were unimpaired, his memory was normal, he could maintain concentration, he could relate to other people and work personnel, and his ability to complete simple tasks was unimpaired. Id. at 546. She also concluded that Plaintiff's ability to complete multistep tasks was unimpaired from a cognitive perspective. Id. Dr. McCray's stress-related observations, if fully credited, repeatedly weigh in Plaintiff's favor. See CAR 545–47. She states that Plaintiff would become overwhelmed by a forty-hour work week. CAR 546–47. Her opinion also states that Plaintiff would likely require assistance with finances due to a history of impulsivity. Id. at 547. Recognizing that Dr. McCray opined that Plaintiff's faculties and

---

with evidence and with Plaintiff's function on medication. ECF No. 16 at 16. The implication is apparently that, because the ALJ discussed Dr. Patterson's and Dr. Morris' opinions, that the ALJ considered Dr. McCray's findings by extension. See id. Even if true, there is no evidence in the ALJ's decision that he relied on the aspects of Dr. Patterson's and Dr. Morris' opinions discussing Dr. McCray's 2013 opinion. CAR 29, 24. The Court can only uphold the ALJ's decision on grounds upon which the ALJ relied. Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). The Court can only review the reasons that the ALJ provided in his decision. Id.

[5] Defendant includes the following citations and parentheticals. The Court has added appropriate reporter citations. Miglioretto v. Colvin, 674 F. App'x 667, 669 (9th Cir. 2017) (after discounting several doctors' opinions as improperly based on the claimant's subjective complaints, "[a]ny error in not expressly rejecting Dr. Lechnyr's opinion based on [the claimant's] discounted credibility is harmless"); Williams v. Colvin, 609 F. App'x 495, 496 (9th Cir. 2015) ("Even if the ALJ erred in rejecting a portion of Dr. Cain's testimony concerning attendance, any error was harmless [because] [t]here was no evidence, apart from Claimant's testimony that the ALJ permissibly discounted, that Claimant ever had, or would be expected to have, attendance problems") (citing Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). ("A decision of the ALJ will not be reversed for errors that are harmless").

14

interpersonal skills were largely unimpaired, if Plaintiff nonetheless cannot manage his own finances and would become wholly overwhelmed by a standard work schedule, then at the very least Dr. McCray's opinion might have factored into a different conclusion as to Plaintiff's ability to undertake other work. See CAR 24. Had the ALJ evaluated Dr. McCray's opinion, which at least conflicted with the ALJ's findings that not all work activity was precluded, the ALJ might have made a different determination. The Court concludes that it cannot confidently say that Dr. McCray's opinion would not have made any difference before a reasonable ALJ.

Especially considering the admonition that courts should be cautious in finding harmless error, the Court concludes that the ALJ's error was not harmless. See Marsh, 792 F.3d at 1172 ([O]ur precedents have been cautious about when harmless error should be found . . . ."); see also Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). The Court will remand for appropriate consideration of Dr. McCray's opinion.

### iii. Dr. Capobianco's Opinion:

Plaintiff challenges the ALJ's evaluation of the opinion of Dr. Capobianco. ECF No. 15 at 15. The ALJ observed that Dr. Capobianco conducted a psychological examination. CAR 24. (discussing Ex. 17F). Plaintiff acknowledged that he had been stable on Depakote (for bipolar disorder) and have been taking it for five years. Id. Dr. Capobianco observed that, at the examination, Plaintiff was properly dressed, cooperative, and had normal speech. Id. Plaintiff was properly oriented with adequate cognition and good insight and judgment. Id. Still, Dr. Capobianco opined that Plaintiff had marked to extreme mental limitations. Id.

The ALJ assigned little weight to Dr. Capobianco's opinion. CAR 24. The ALJ gave the opinion little weight because it was based on a one-time evaluation, because Dr. Capobianco did not have access to Plaintiff's medical records as part of his assessment, and because Dr. Capobianco was not familiar with the record before the ALJ. Id. Dr. Capobianco's opinion, in the ALJ's view, was inconsistent with Plaintiff's own statements acknowledging that his condition is stable on medication, with only low-grade symptoms presenting themselves. Id. Dr. Capobianco's opinion was further inconsistent with his own reported findings and with "the previously discussed treatment record showing a stable condition with few findings." Id.

15

1          Plaintiff challenges the ALJ's analysis. ECF No. 15 at 15. He contends that the ALJ

2    did not provide specific and legitimate reasons for rejecting the opinion. Id. Plaintiff asserts that

3    the ALJ erred in dismissing the opinion as a "one-time evaluation" because that is an examiner's

4    job and is "one more time than the nonexaminers [that the ALJ favors]." Id. Plaintiff contends that

5    it is irrelevant that Dr. Capobianco did not review Plaintiff's records. Id. Dr. Capobianco's written

6    sections discussing Plaintiff's medical history and mental status illustrates a handle of Plaintiff's

7    conditions. Id. Nor, in Plaintiff's view, is Dr. Capobianco's opinion inconsistent with the record.

8    Id. Although the opinion is inconsistent with the ALJ's isolation of statements from the record, the

9    wider record supports Dr. Capobianco opinion. Id. Finally, Plaintiff contends that Dr. Capobianco's

10   opinion is not internally inconsistent. Id. Dr. Capobianco noted details of obsessive-compulsive

11   behavior, found certain problems in Plaintiff's mental status exam, explored the details of both

12   Plaintiff's mania and depression, and his opinions came with explanations on every page. Id.

13          Exhibit 17F of the record contains the October 16, 2017, Medical Source Statement

14   from Dr. Capobianco. See CAR 897–901. The statement is similar to a check-box form. See id.

15   Dr. Capobianco rated Plaintiff's limitations by circling an adjective (e.g., moderate or severe) most

16   closely describing Plaintiff's level of impairment in several area (e.g., ability to remember simple

17   instructions). E.g. id. at 898. Dr. Capobianco opined consistent with the ALJ's summary. Id. at

18   897–901. As to sustained concentration and persistence capacity, Dr. Capobianco noted: "difficulty

19   prioritizing; gets distracted; fails to get back to original instruction; becomes highly anxious; mind

20   freezes up & feels paralyzed by multiple commands, instructions." Id. at 899. Dr. Capobianco

21   assigned mostly marked to extreme limitations in this area. See id. As to social interactions, Dr.

22   Capobianco stated: "Pt. has significant difficulties trusting others both in workplace & privately;

23   sense of insecurity, shame, guilt, re: psychiatric condition." Id. at 900. Dr. Capobianco assigned

24   mild and marked restrictions in this area. See id. On adaptation, Dr. Capobianco stated: "Pt. adapts

25   poorly under stress; traumatic memories intrude; Bipolar mania or depression lead to poor ability

26   to cope w/ stress; obsesses on details to the point he is afraid to act; fearful of failure." Id. at 900-

27   01. Dr. Capobianco assigned mild to marked limitations in adaptation. See id. at 900. He opined

28   that Plaintiff is unable to work. See id. at 901.

1   Defendant does not reply to Plaintiff's arguments. See ECF No. 16. The question is

2   thus simply whether the ALJ provided satisfactory reasons for discrediting Dr. Capobianco's

3   opinion. Dr. Capobianco's opinion is that of an examining physician contradicted by the opinions

4   of other physicians.[6] See CAR 24. The ALJ was therefore required to provide specific and

5   legitimate reasons supported by substantial evidence for discrediting Dr. Capobianco's opinion.

6   Ford, 950 F.3d at 1155; Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

7   ALJs evaluate medical opinions on a number of factors. See, e.g., 20 C.F.R. §

8   416.927(c); see also, e.g., Ford, 950 F.3d at 1155; Tonapetyan, 242 F.3d at 1149. Those factors

9   include, for example, the nature and extent of a treatment relationship, consistency with the record,

10  whether the source provides support for conclusions, and the extent to which a physician is familiar

11  with the evidence in a claimant's record. 20 C.F.R. § 416.927(c). It is appropriate for an ALJ to

12  consider other factors, like whether a physician's conclusions are inconsistent with the physician's

13  own findings. E.g., Khounesavatdy v. Astrue, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008).

14  The ALJ's reasons for rejecting Dr. Capobianco's opinion were adequate. Among

15  the other reasons that he gave, the ALJ stated that Dr. Capobianco's opinion regarding Plaintiff's

16  "marked to extreme mental limitations" was inconsistent with Plaintiff's own statements, with his

17  own findings, and with the record generally. CAR 24. Those conclusions are supported by

18  substantial evidence on the record. For example, Dr. Capobianco's opinion noted that Plaintiff's

19  mood was stable, thought processes well-organized, judgment and insight good, and that Plaintiff

20  said Depakote helped to keep him stable. CAR 895. Yet, as noted above, Dr. Capobianco noted

21  serious and pervasive limitations. CAR 895–901. Although the Court does not believe that the

22  opinion is nearly as inconsistent as the ALJ makes it out to be, there is some inconsistency between

23  Capobianco's initial assessment of Plaintiff and his ultimate conclusions, which is a specific and

24  legitimate reason to give the opinion less weight. Id.; see Ford, 950 F.3d at 1154; Khounesavatdy;

25

26

27

28

[6] Dr. Patterson's and Dr. Morris' opinions contradict Dr. Capobianco's opinion. CAR 24. Dr. Patterson and Dr. Morris are nonexamining physicians, so their opinions cannot, on their own, constitute specific, legitimate reasons for rejecting Dr. Capobianco's examining opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see McCloud v. Saul, 818 F. App'x 730, 733 (9th Cir. 2020); Kelly v. Berryhill, 727 F. App'x 282, 283 (9th Cir. 2018). But their opinions can constitute substantial evidence when consistent with other evidence on the record. Tonapetyan, 242 F.3d at 1149; see McCloud, 818 F. App'x at 733; Kelly, 727 F. App'x at 283.

1  549 F. Supp. 2d at 1229. The Court's place is not to adopt its belief over the ALJ's if substantial

2  evidence supports the ALJ's decision. See, e.g., Ford, 950 F.3d at 1154.

3          The ALJ also concluded that Dr. Capobianco did not review any records and was

4  unfamiliar with Plaintiff's case outside of his examination. CAR 24. Plaintiff appears to concede

5  the point. See ECF No. 15 at 15. Dr. Capobianco's lacking familiarity lends additional support to

6  the ALJ's assessment of weight. See, e.g., 20 C.F.R. § 416.927(c)(6). By way of further example,

7  the ALJ concluded that Dr. Capobianco's opinion was also inconsistent with Plaintiff's treatment

8  record generally showing a stable condition. CAR 24. That reason is likewise supported by

9  substantial evidence on which the ALJ relied. E.g., CAR Exs. 1A, 5A, 5F, 6F, 9F. Multiple records

10 illustrate generally stable condition, at least with medication. E.g., CAR Exs. 1A, 5A, 5F, 6F, 9F.

11         Although the Court considers Plaintiff's historical condition and record open to

12 interpretation in the light of the competing opinions, substantial evidence is not a high bar. And, in

13 any event, if evidence is susceptible to multiple interpretations, one of which supports the ALJ's

14 decision, the ALJ's conclusion must be upheld. Revels, 874 F.3d at 654. The Court here is not

15 prepared to say that the ALJ's determination that Dr. Capobianco's opinion is internally

16 inconsistent or inconsistent with the record is not supported by substantial evidence. E.g., Ford, 950

17 F.3d at 1154–55. The ALJ appropriately identified specific and legitimate reasons for discrediting

18 the opinion. Id. There was no error as to the ALJ's assessment of Dr. Capobianco's opinion.

19               **iv.   Assignment of Weight to Dr. Chadha's and Ms. Xiong's Opinions:**

20         Dr. Chadha and Ms. Xiong are treating medical sources. CAR 23. Typically, their

21 opinions would be entitled to greater weight than opinions of examining or nonexamining

22 physicians. See Garrison, 759 F.3d at 1012; Lester, 81 F.3d at 830. As noted earlier, the

23 Commissioner's own regulations command that an opinion from a treating physician will receive

24 controlling weight if it is well-supported and consistent with other substantial evidence in the

25 record. 20 C.F.R. § 404.1527(d)(2). Yet, if a treating source's opinion is contradicted by another

26 doctor's opinion, an ALJ may reject it with providing specific and legitimate reasons supported by

27 substantial evidence. E.g., Garrison, 759 F.3d at 1012.

28

1        Dr. Chadha and Ms. Xiong variously opined, at least from 2016 to 2017, that
2   Plaintiff had moderate to extreme limitations in areas like adaptation and interaction with others.
3   CAR 22 (citing Exs. 7F, 8F, 10F, 11F). They both estimated that Plaintiff could not tolerate normal
4   stress and would miss substantial periods of work. Id. Dr. Chadha and Ms. Xiong jointly concluded
5   in October 2017 that because of his symptoms Plaintiff could not work, interact with the public or
6   coworkers, and could not handle normal work stress. Id. (citing Ex. 15F).

7        The ALJ, as noted earlier, gave little weight to the opinions of Dr. Chadha and Ms.
8   Xiong. Id. The ALJ determined that they were "inconsistent with the objective medical findings
9   and clinic notes showing [Plaintiff's] condition is controlled with medication." Id. In the ALJ's
10  view, the record indicated a history of bipolar disorder managed with subtherapeutic levels of
11  Depakote. Id.   at 22. Although Plaintiff stopped medication in October 2015, he restarted
12  medication in November 2015 and reported improvement even though he was resistant to higher
13  doses. Id. Similarly, various examinations from 2016 to 2017 indicated Plaintiff arrived on time to
14  appointments, was dressed and groomed appropriately, was cooperative, presented with linear
15  thought and without "kinetic abnormalities," and had better tolerance for frustration. Id. at 23.
16  Although Plaintiff had some family conflicts and intermittently experienced anxiety and
17  depression, overall Plaintiff was stable and reported better sleep and family relations. Id.

18       Plaintiff argues that the ALJ did not offer specific and legitimate reasons supporting
19  the grant of "little weight" to Dr. Chadha's and Ms. Xiong's opinions. ECF No. 15 at 14–15. For
20  example, he contends that the ALJ's summarization of Plaintiff's medical history, covering at least
21  2016 to 2017, does not *specifically* show that medication manages Plaintiff's condition. Id. at 14.
22  The ALJ, according to Plaintiff, took his interpretation of the evidence from the opinions of Dr.
23  Patterson and Dr. Morris, which by themselves are not substantial evidence sufficient to overcome
24  the opinions of his Plaintiff's physicians. Id. He also contends that the ALJ impermissibly isolated
25  specific quanta of evidence supporting his decision. Id.

26       Defendant rebuts by citing much of the evidence that the ALJ summarized. ECF No.
27  16 at 13–16. Defendant contends that the evidence establishes substantial evidence supporting the
28  ALJ's conclusion. Id. More specifically, Defendant maintains that the ALJ's analysis sets out the

inconsistencies between the medical record and Dr. Chadha's and Ms. Xiong's opinions. Id. at 14. Those inconsistencies, in Defendant's eyes, constitute an additional reason supporting his discrediting of Dr. Chadha's and Ms. Xiong's opinion because an ALJ need not accept treating sources' opinions if they are brief, conclusory, and unsupported by clinical findings. Id. at 14–15 (citing Tonapetyan, 242 F.3d at 1149; Thomas, 278 F.3d at 957).

The Court again believes that the record is susceptible to more interpretation concerning Plaintiff's stability than the ALJ's decision fairly credits. Dr. Chadha's and Ms. Xiong's opinions find support in some of the same evidence—much of which comes from Dr. Chadha's and Ms. Xiong's own notes—that the ALJ relies on in discrediting their opinions. See CAR 22–23 (citing Ex. 5F, 6F, 9F). One example, Exhibit 9F, on which the ALJ relies, reflects Plaintiff's frequent anxiety, concerns over work, and even an additional November 2015 letter from Dr. Chadha (in support of Plaintiff's application for assistance) stating that Plaintiff is unable to work and would not able to work for at least a year as he worked towards stabilizing his mental health. CAR Ex. 9F. Multiple medical source statements from Dr. Chadha and Ms. Xiong indicate moderate and marked limitations in areas of functioning like ability to respond to changes in work settings, maintain a schedule, and interact with others. CAR Exs. 7F, 8F, 11F. Examples like the foregoing weigh against affirming the ALJ's decision.

Nevertheless, a record's vulnerability to multiple rational interpretations does not preclude affirming an ALJ's decision. See Revels, 874 F.3d at 654. As the ALJ points out, over the course of 2016 Plaintiff was also frequently calm, exhibited good judgment and insight, reported working as a driver for Lyft, reported improvements in his mood, exhibiting and reported stability in his symptoms. CAR 22–23 (discussing Exs. 5F, 6F, 9F). On multiple occasions, providers noted, or Plaintiff acknowledged manageable symptoms with medication. CAR 22–23 (discussing Exs. 5F, 6F, 9F). Plaintiff noted improvements in sleep and ability to appropriately handle frustration and that medication helped him feel less anxious. CAR 23 (citing Ex. 9F). And in 2017, although Plaintiff variously had anxious moods and depressive symptoms, he was stable on medication, reported going to the gym, worked with an uncle on a software project, and had stable family

relations. CAR 23 (citing Exs. 9F, 12F, 15F, 19F). Though, the ALJ did acknowledge Plaintiff expressed some fear over working. Id.

After concluding that Dr. Chadha's and Ms. Xiong's ultimate conclusions were inconsistent with the record, much of what the ALJ relies on in summarizing evidence is Dr. Chadha's and Ms. Xiong's own notes. CAR 22–23. But that the Court might reach a different conclusion, or interpret the evidence above differently than did the ALJ, is irrelevant, provided that a rational interpretation supports the ALJ's decision. See Revels, 874 F.3d at 654. The Court must conclude that a rational interpretation supports the ALJ's decision here.

Substantial evidence is not a particularly high bar. See Garrison, 759 F.3d at 1009. It is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Id. The Court cannot say that substantial evidence does not support the ALJ's interpretation of the record that Plaintiff's symptoms are managed with medication. See, e.g., CAR Exs. 5F, 6F, 9F, 12F. And thus, that Dr. Chadha's and Ms. Xiong's opinions are inconsistent with the record because they reflect observations more serious than Plaintiff's controlled condition. See CAR 22–23 (discussing Exs. 5F, 6F, 9F, 11F, 12F).

In sum, the ALJ's rejection of Dr. Chadha's and Ms. Xiong's opinions as "inconsistent with the objective medical findings and clinic notes showing his condition is controlled with medication" was a specific and legitimate reason supporting the ALJ's assignment of little weight to the opinions. See, e.g., Ford, 950 F.3d at 1154. Because the Court has ultimately concluded that substantial evidence supports that conclusion, the ALJ did not err.

## B. Plaintiff's Credibility:

### 1. Weighing a Claimant's Credibility:

The Ninth Circuit has held that, when the record includes objective medical evidence indicating that a claimant suffers from an impairment that could reasonably produce the symptoms complained of, an adverse credibility determination must be based on specific, clear and convincing reasons. Brown-Hunter, 806 F.3d at 492–93; Carmickle, 533 F.3d at 1160. The only time the clear and convincing standard does not apply is when there is affirmative evidence that a claimant is malingering. Brown-Hunter, 806 F.3d at 492–93; Carmickle, 533 F.3d at 1160. The

1   reasons an ALJ provides for rejecting a claimant's testimony about their pain must be both specific

2   *and* clear and convincing, not either or. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014).

3   General findings are unsatisfactory. Brown-Hunter, 806 F.3d at 493.

4           More specifically, the Ninth Circuit has adopted a two-step test for determining the

5   extent to which an ALJ must credit the claimant's report of their symptoms. First, the ALJ must

6   ascertain whether a claimant has presented objective medical evidence of an underlying impairment

7   that could reasonably be expected to produce the symptoms alleged. Revels, 874 F.3d at 655. A

8   claimant need not show that an impairment could reasonably be expected to cause the severity of

9   the symptom, only that it could reasonably have caused some degree of the symptom. Id. Neither

10   must a claimant produce objective medical evidence of the pain or symptom itself. Id. Second, and

11   as stated, in the absence of malingering, an ALJ may only reject a claimant's testimony about the

12   severity of their symptoms by offering specific, clear and convincing reasons for doing so. Id. This

13   final question is a high bar. See id. The clear and convincing standard is the most demanding

14   standard required in Social Security cases. Id.

15           An ALJ, of course, is not required to believe every allegation. See Treichler v.

16   Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 (9th Cir. 2014). But the ALJ's reasons for

17   discounting or rejecting a claimant's subjective-symptom testimony must be specific enough to

18   permit the Court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony.

19   Brown-Hunter, 806 F.3d at 483. The ALJ must identify the testimony from the claimant that they

20   find incredible and explain what evidence undermines it. Treichler, 775 F.3d at 1102.

21           Factors that an ALJ may consider in assessing a claimant's subjective pain and

22   symptom testimony include the claimant's daily activities; the location, duration, intensity and

23   frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

24   effectiveness or side effects of any medication; other measures or treatment used for relief;

25   functional restrictions; and other relevant factors. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

26   Cir. 2007); Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). An ALJ may also consider

27   ordinary factors such as (1) "the claimant's reputation for lying, prior inconsistent statements

28   concerning the symptoms, and other testimony by the claimant that appears less than candid; [and]

(2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284); Reeves v. Cmm'r of Soc. Sec., No. 1:20-cv-00080-SAB, 2021 WL 929612, at *5–6 (E.D. Cal. Mar. 11, 2021).

An ALJ, however, may not use activities of daily living as a catch-all factor. See, e.g., Garrison, 759 F.3d at 1015–16. Impairments impeding work do not always confine a claimant to bed. Id. Claimants can be expected to try to lead normal lives. See id. Many home activities do not easily transfer to the workplace. Id. Only when a claimant's level of activity is inconsistent with their claimed limitations do the daily activities bear upon credibility Id. Nevertheless, if a claimant can spend a substantial amount of time engaged functions that are transferable to the workplace, a specific finding as to that circumstance may be sufficient to discredit an allegation of pain. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

**2. The ALJ's Decision:**

At Step 4, the ALJ analyzed the credibility of Plaintiff's statements and testimony. See CAR 21–23. He first summarized Plaintiff's allegations. See id. at 21. For instance, the ALJ described Plaintiff's reports that he is paranoid when stressed and cannot concentrate, has difficulty completing tasks, does not like to be around people, and needs reminders to take medication. Id. The ALJ concluded that Plaintiff's impairments could reasonably be expected to cause Plaintiff's alleged symptoms. Id. at 22. But the ALJ nonetheless determined that Plaintiff's statements concerning the severity his symptoms were inconsistent with the evidence. Id. The ALJ summarized medical evidence ostensibly discrediting Plaintiff's testimony.[7] See CAR 22–25.

In relevant part, Plaintiff argues that after the ALJ determined that Plaintiff's allegations were inconsistent with the record, the ALJ never gave clear and convincing reasons supporting that conclusion. ECF No. 15 at 11–13. Plaintiff takes issue with the alleged standalone, disconnected summaries of medical evidence that the ALJ includes across different pages. See id. In Plaintiff's view, the ALJ unclearly includes a mass of "objective evidence" across multiple pages

---

[7] Although the ALJ determined that Plaintiff's allegations could "find support" in the opinions of Dr. Chadha and Ms. Xiong, he gave those opinions little weight. as the Court discussed earlier. See CAR 22.

1  of the decision without ever connecting it back to Plaintiff's claims and explaining why the

2  evidence undermines Plaintiff's claims. See id. at 11–13.

3       Defendant responds by arguing that the ALJ accounted for Plaintiff's symptoms.

4  ECF No. 16 at 24. The ALJ variously noted that objective clinical findings do not support Plaintiff's

5  claims as to the severity of his symptoms and functional limitations, and that at most his symptoms

6  are moderate and intermittent. Id. (discussing CAR 25). The ALJ, in Defendant's view, laid out

7  evidence showing inconsistencies between the record and Plaintiff's testimony, which is a valid

8  reason to discount his testimony. Id. at 24–27.

9       Defendant's arguments are unavailing.[8] Under Ninth Circuit precedent, Plaintiff's

10 general point is well-taken. To the extent that Plaintiff argues that the ALJ's analysis is insufficient

11 because it does not sufficiently reveal his consideration of Plaintiff's testimony and fails to link the

12 testimony found not credible to evidence undermining it, the Court agrees.

13      Using typical formulaic language, the ALJ concluded that Plaintiff's "medically

14 determinable impairments could reasonably be expected to cause the alleged symptoms." CAR 22.

15 Yet, "Plaintiff's statements concerning the intensity, persistence and limiting effects of [those]

16 symptoms" were inconsistent with the record. Id. After discrediting Plaintiff's testimony, however,

17 rather than specifically discussing which testimony was not credible, the ALJ largely just recites

18 medical evidence ostensibly meant to support his conclusion. Id. 22–25.

19      To the ALJ's credit, his summary of Plaintiff's medical history is detailed. See id.

20 He summarized progress notes, clinical findings, Plaintiff's subjective complaints, and evidence

21 weighing both for and against Plaintiff. Id. For example, he discussed Plaintiff's improvements

22 with medication, Plaintiff's recurrent anxiety and frustration, and details of Plaintiff's daily

23 activities like driving and going to the gym. Id.

24      The ALJ then broadly concluded in a few places that Plaintiff's symptoms were not

25 as severe as Plaintiff contended. Id. at 23, 25. Rather, in the ALJ's view, "this evidence" and

26

27 [8] Defendant relegates the applicable clear and convincing standard to a footnote, stating that the Ninth Circuit "sometimes" applies the standard when review an ALJ's discrediting of a claimant's allegations. ECF No. 16 at 25. Defendant does not ever actually apply the standard, which is the governing rule in the Ninth Circuit. Id. at 24 n.1;

28 Brown-Hunter, 806 F.3d at 492–93.

"conservative treatment modalities" illustrated that Plaintiff's allegations of severe symptoms and daily limitations were "inconsistent with the medical evidence of record overall." Id. at 23. "Objective clinical findings" and other evidence did not support Plaintiff's allegations. Id. at 25. And Plaintiff's allegations as to his symptoms, which evidence shows were intermittent and mild, were not "wholly supported" insofar as they alleged all work activity is precluded. Id. at 25.

But the ALJ's summary is disjointed, moving across disconnected paragraphs meant to support the discrediting of Plaintiff's testimony. See id. at 22–25. He skips from subject to subject only to return to Plaintiff's testimony and broadly conclude once more that it is unsupported. Id.

Plaintiff cites a compelling example. See ECF No. 15 at 11. The ALJ first concluded that Plaintiff's testimony was inconsistent with the record. Id. at 22. But then the ALJ moves straight into discussing Dr. Chadha's and Ms. Xiong's opinions and why he gave them little weight. Id. Although he subsequently recites a host of medical evidence, presumably meant to discredit both Plaintiff's testimony *and* Dr. Chadha's and Ms. Xiong's opinions, the ALJ never connects Plaintiff's testimony with any contradictory evidence. Id. at 22–25. It is the same with the other evidence ostensibly contradicting Plaintiff's allegations. Id. The ALJ's discussion of Plaintiff's daily activities, for example, is never directly connected to Plaintiff's testimony. Id. at 24. The ALJ's generalized statements that the evidence does not support Plaintiff's allegations are left to stand on inference. See id. at 22–25. That disconnect is error.

The Court, of course, does not suggest that the Commissioner must follow a particular format in rendering disability determinations. Disability determinations need not be eloquent. Nevertheless, disjointed summaries of Plaintiff's subjective complaints and medical evidence, tied only inferentially together with broad conclusions are inadequate. See CAR 22–23; Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020); Brown-Hunter, 806 F.3d at 492–94; see also Holcomb v. Saul, 832 F. App'x 505, 506 (9th Cir. 2020). An ALJ need not undertake a line-by-line deconstruction of a claimant's testimony, but under Ninth Circuit precedent, summary and implied discrediting of testimony is not enough. See Lambert, 980 F.3d 1277–78; Holcomb, 832 F. App'x at 506; Brown-Hunter, 806 F.3d at 492–94. Although the ALJ here included large summaries of medical evidence, including Plaintiff's own complaints, and broadly concluded in multiple

instances that the record did not support Plaintiff's allegations, the ALJ never adequately *linked* Plaintiff's testimony to portions of the record supporting the adverse credibility decision. CAR 22–25; see Brown-Hunter, 806 F.3d at 492–94; Holcomb, 832 F. App'x at 506.

The ALJ must provide clear and convincing reasons to discount Plaintiff's testimony. See Brown-Hunter, 806 F.3d at 493. A summary of evidence, even preceded by a summary of testimony and followed by generalized conclusions reaffirming what the evidence shows, is not the same as offering clear and convincing *reasons* for discounting testimony. Id. at 494; Holcomb, 832 F. App'x at 506. The ALJ did conclude that the record shows a stable, controlled condition when Plaintiff takes medication. See, e.g., CAR 22–23, 25. And he noted that Plaintiff undertook daily activities. See id. at 24. Those details inferentially undermine Plaintiff's testimony. CAR 22–25. But the ALJ neglected to link Plaintiff's testimony to *specific* medical evidence and explain why that evidence contradicted Plaintiff's testimony. CAR 22–25. Indeed, the ALJ did not discuss Plaintiff's symptom testimony when actually detailing medical evidence. Id.

The Court is constrained to review only those reasons that the ALJ asserted for his decision. Brown-Hunter, 806 F.3d at 492; Holcomb, 832 F. App'x at 506. Because the ALJ did not sufficiently specify his reasons for discrediting Plaintiff's testimony, the Court is unable to meaningfully review his apparent reasoning without improperly substituting its conclusions for the ALJ's or speculating as to what the basis of his conclusions were. E.g., Brown-Hunter, 806 F.3d at 492–95. The Court cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony because the ALJ never identified *which* testimony he found not credible, and never explained *which* evidence contradicted that testimony. Lambert, 980 F.3d at 1277; Brown-Hunter, 806 F.3d at 494. The failure to specify the reasons for discrediting Plaintiff's testimony was error. See Brown-Hunter, 806 F.3d at 493–94; Holcomb, 832 F. App'x at 506.

For the same reasons, the Court cannot say that the error was harmless. See Lambert, 980 F.3d at 1277–78; Brown-Hunter, 806 F.3d at 494–95. "An error harmless only if it is 'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" Brown-Hunter, 806 F.3d at 494 (citation omitted). But here, the Court can neither discern the ALJ's path nor definitively say that the error was

inconsequential to the determination of nondisability. <u>See id.</u> As stated, the ALJ did not provide reviewable reasons indicating why Plaintiff's testimony is not credible. <u>See id.</u>; CAR 18–23. Other than generally stating that Plaintiff's allegations of the severity and limiting effects of his symptoms were unsupported, the ALJ did not adequately specify which testimony he found not credible and why. CAR 22–25; <u>see</u> <u>Lambert</u>, 980 F.3d at 1277; <u>Brown-Hunter</u>, 806 F.3d at 494. This falls short of meeting the ALJ's responsibility to provide reasons for which he made an adverse determination. <u>Brown-Hunter</u>, 806 F.3d at 494; <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014).

The ALJ's generalized conclusions, even though he states that he concludes the evidence undermines Plaintiff's testimony as to the severity of his symptoms, are not currently sufficient. <u>See</u> CAR 23, 25. The Court accordingly remands to the ALJ for appropriate, specific reasoning in reviewing Plaintiff's testimony consistent with the above

**C. Lay Witness Testimony:**

    **1.   Weighing Lay Witness Testimony:**

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. <u>See</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." <u>See</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." <u>Dodrill</u>, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. <u>See</u> <u>Valentine v. Commissioner Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

An ALJ can reject lay testimony as inconsistent with the record. <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006); <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005); <u>Lewis</u>,

236 F.3d at 511. A lack of corroboration by the record, however, is not an adequate reason to reject lay testimony. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017); Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009). The Court notes the distinction here. An ALJ *can* reject lay testimony that is *inconsistent*. Greger, 464 F.3d at 972; Bayliss, 427 F.3d at 1218; Lewis, 236 F.3d at 511. But lack of support from the overall evidence is an improper basis on which to disregard lay opinions. Diedrich, 874 F.3d at 640; Bruce, 557 F.3d at 1116. The Ninth Circuit has recognized the difference. Burkett v. Saul, 806 F. App'x 509, 512–13 (9th Cir. 2020).

### 2. The ALJ's Decision:

The ALJ, at Step 4, summarized the testimony of Plaintiff's sister, Kate Le. CAR 22. Among other things, Ms. Le reported that Plaintiff makes irrational decisions, is paranoid, is defiant and confrontational when manic, cannot focus or complete tasks, has difficulty following instructions, and needs reminders to take his medication. Id. A few pages later, the ALJ noted that he considered Ms. Le's testimony. Id. at 25. The ALJ concluded that Ms. Le's (together with Plaintiff's) testimony as to the severity of Plaintiff's symptoms were not "wholly supported, insofar as the claims that they preclude all work activity." Id.

Plaintiff challenges the ALJ's rejection of Ms. Le's testimony. ECF No. 15 at 13. In Plaintiff's view, the ALJ's conclusion that Ms. Le's testimony was not "wholly supported" was legally insufficient. Id. Defendant responds that the ALJ detailed evidence establishing inconsistencies between Ms. Le's testimony and the record. ECF No. 16 at 23–27. Defendant contends that inconsistency with the record is a valid reason to reject Ms. Le's testimony. Id.

Defendant's arguments are again unpersuasive. Defendant is correct in the abstract that the ALJ could permissibly reject Ms. Le's testimony for being inconsistent with the record. Greger, 464 F.3d at 972; Bayliss, 427 F.3d at 1218. But that is not what the ALJ did. CAR 25. The ALJ rejected Ms. Le's testimony because it was not "wholly supported." See id. The ALJ's conclusion more closely describes a lack of overall support from the record rather than a description of conflict. See Burkett, 806 F. App'x at 512–13. The ALJ's stated reasons for rejecting the statements from Plaintiff's husband and daughter thus fall closer to cases like Diedrich and Bruce

1   than to cases like <u>Bayliss</u> or <u>Lewis</u>. <u>See id.</u> A lack of overall support from the record is not a valid,

2   germane reason to reject Ms. Le's testimony. <u>Diedrich</u>, 874 F.3d at 640; <u>Bruce</u>, 557 F.3d at 1116

3   The Court recognizes that the ALJ *might* have meant to identify inconsistency

4   between Ms. Le's testimony and the record in detailing medical evidence and Ms. Le's testimony.

5   <u>See</u> CAR 22–25. But that is not what the ALJ said. He said that Ms. Le's testimony lacked support

6   from the record. CAR 25. And for that reason, he erred. The Court can only review and uphold the

7   ALJ's decision on the basis of the reasons the ALJ provided. <u>Revels</u>, 874 F.3d at 654. The Court

8   cannot uphold the ALJ's decision upon grounds upon which did not rely. <u>Id.</u>

9   The Court concludes that remand to the ALJ is warranted for any appropriate

10   consideration of lay testimony that is consistent with the above analysis.[9]

11   **D.  Step 3 Analysis and Mental Residual Functional Capacity**

12   Plaintiff argues that the ALJ's explanations for his decision concerning whether

13   Plaintiff met or equaled the criteria under Listing 12.04 of the Listing of Impairments are

14   insufficient. ECF No. 15 at 9–10. Plaintiff likewise argues that the ALJ did not adequately explain

15   his decision regarding his determination of Plaintiff's mental residual functional capacity. <u>Id.</u> at

16   10–11. Plaintiff appears to assign error directly to explanations allegedly lacking in sufficient

17   reasoning to permit meaningful review. <u>Id.</u> at 9–11.

18   For instance, the ALJ determined that Plaintiff did not have an impairment or

19   combination of impairments meeting or equaling paragraph B of Listing 12.04. CAR 20. Plaintiff

20   appears to take issue with the ALJ's alleged *lack* of an explanation for determining that Plaintiff

21   did not satisfy paragraph B. <u>See</u> ECF No. 15 at 9–10. Plaintiff argues that at Step 3 an ALJ must

22   evaluate the relevant evidence prior to concluding that a claimant does not satisfy a listed

23   impairment. <u>Id.</u> at 9. A boilerplate finding is not sufficient. <u>Id.</u> The ALJ does not evaluate in detail

24   Plaintiff's function at Step 3. <u>Id.</u> Although the ALJ contends that he discussed paragraph-B-related

25   functioning under residual functional capacity, Plaintiff asserts that the ALJ never actually does so.

26

27   [9] Considering the content of Ms. Le's testimony and that corroboration is not a permissible reason to reject it, the Court determines that it cannot conclude that the ALJ's error did not negate the validity of the credibility determination, thus

28   making the error inconsequential to the ultimate disability determination. <u>See, e.g.</u>, <u>Carmickle</u>, 533 F.3d at 1161–63; <u>see also</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195–97 (9th Cir. 2004). The error was not harmless.

Id. at 9–10. Further, it is unclear which portions of the residual functional capacity analysis support his determination. Id.

In the Court's reading, subsumed within Plaintiff's arguments is the implied contention that substantial evidence does not support the ALJ's determinations regarding paragraph B and Plaintiff's mental residual functional capacity. Id. at 9–11. Plaintiff thus effectively challenges both the alleged lack of explanations and the evidentiary support for those decisions. See id. Because the Court has remanded on other evidentiary issues, however, including for further consideration of Ms. Xiong's and Dr. McCray's opinions, the world of evidence in this case has changed. Determination of Plaintiff's limitations and mental residual functional capacity may change in the light of the new information. And, in any event, what information may qualify as substantial evidence has changed. Too, in the light of the Court's remand for sufficient weighing of Plaintiff's credibility and Ms. Le's credibility, the ALJ's explanations may further change.

The Court accordingly does not address the above arguments concerning the Listing of Impairments and Plaintiff's mental residual functional capacity.

## V. CONCLUSION

After having found error, the Court retains discretion to remand a case for additional evidence or simply direct an award of benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017). A case may be remanded under the applicable "credit-as-true" rule for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would not be useful; (2) the ALJ has not provided legally adequate reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. Garrison, 759 F.3d at 1020.

Even if all the conditions of the "credit-as-true" rule are met, the Court retains flexibility to remand if the overall record creates serious doubt about whether a claimant is disabled within the meaning of the Social Security Act. Id. at 1020–21; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide

benefits."); <u>Treichler</u>, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, remand is appropriate to allow the ALJ to reanalyze Plaintiff's claims in the light of the evidence and errors noted above. This matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (ECF No. 15) is **GRANTED**;

2.    Defendant's cross-motion for summary judgment (ECF No. 16) is **DENIED**;

3.    The Commissioner's decision is **REVERSED**;

4.    This case is remanded for further proceedings consistent with this order; and

5.    The Clerk of the Court shall enter judgment for Plaintiff and close this case.

Dated:  March 31, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

31